UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

UNITED STATES OF AMERICA,          )
                                   ) CASE NO. CR20-00151-RAJ
                    Plaintiff,     )
                                   ) Seattle, Washington
v.                                 )
                                   ) July 14, 2023
EPHRAIM ROSENBERG,                 ) 10:00 a.m.
                                   )
                    Defendant.     ) SENTENCING HEARING
                                   )
                                   )

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:


  For the Plaintiff:      Miriam R. Hinman
                          Andrew Friedman
                          United States Attorney's Office
                          700 Stewart Street, Suite 5220
                          Seattle, WA 98101

  For the Defendant:      Jacob Laufer
                          Jacob Laufer PC
                          65 Broadway, Suite 1005
                          New York, NY 10006

                          Peter Offenbecher
                          Skellenger Bender PS
                          1301 5th Avenue, Suite 3401
                          Seattle, WA 98101-2605


  Reported by:            Nancy L. Bauer, CCR, RPR
                          Federal Court Reporter
                          700 Stewart Street, Suite 17205
                          Seattle, WA 98101
                          nancy_bauer@wawd.uscourts.gov

```
 1                      PROCEEDINGS
 2    _____

 3           THE CLERK:  We're here for sentencing in the matter of
 4    the United States versus Ephraim Rosenberg, Cause No. CR20-151,
 5    assigned to this court.

 6       Counsel, please make your appearances for the record.

 7           MS. HINMAN:  Good morning, Your Honor.  Miriam Hinman
 8    and Andrew Friedman for the United States.

 9           THE COURT:  Good morning, both of you.  Please be
10    seated.

11           MR. OFFENBECHER:  Peter Offenbecher and Jacob Laufer,
12    counsel for Ed Rosenberg, who is present in court, out of
13    custody.  Good morning, Your Honor.

14           THE COURT:  Good morning.

15           THE PROBATION OFFICER:  Good morning, Your Honor.
16    Sarah Asbury-Baca on behalf of probation.

17           THE COURT:  Good morning.  Thank you for being here
18    this morning.

19       We are here for the sentencing of the defendant.  It's my
20    practice to begin the sentencing proceeding by identifying all
21    the documents that I've received and reviewed.  Those documents
22    include the following:

23       The presentence report prepared by Probation Officer Sarah
24    Asbury-Baca, and attachments, and these include a victim impact
25    statement, a letter, and a letter to the court from the
```

1  defendant; the government's sentencing memorandum; the

2  defendant's sentencing memorandum and exhibits, letters of

3  support for the defendant; and the plea agreement.

4      Counsel for the government, first of all, are there any

5  other documents that I did not state, that you're aware of, that

6  I should have reviewed in preparation for sentencing?

7      MS. HINMAN:  No, Your Honor.  Thank you.

8      THE COURT:  And while I have you on your feet,

9  counsel, have you reviewed the presentence report?

10     MS. HINMAN:  Yes, Your Honor.

11     THE COURT:  My review of that document suggests that

12 there are no outstanding objections by the government that

13 require resolution by the court.  Is that correct?

14     MS. HINMAN:  That's correct.

15     THE COURT:  Counsel for the defense, are you aware of

16 any additional documents, other than those that I've stated?

17     MR. LAUFER:  No, there are no other documents, Your

18 Honor.

19     THE COURT:  And, counsel, I trust that you've reviewed

20 the presentence report with your client?

21     MR. LAUFER:  We have carefully reviewed it with

22 Mr. Rosenberg.

23     THE COURT:  And my understanding is there is only one

24 objection, and that relates to paragraphs 24 and 31.  Is there

25 any additional argument that you'd like to make regarding that?

1          MR. LAUFER:  None other, no.

2          THE COURT:  Then the court will overrule the

3    objection, and I will note that, given the context that is

4    necessary for the court to consider and for any other reviewing

5    entities to review, it's appropriate for those descriptive

6    paragraphs to remain as stated.

7          Other than those objections, any other objections?

8          MR. LAUFER:  There are none, Your Honor.

9          THE COURT:  Thank you.  You may be seated.

10    Then I'll begin with my calculations using the 2021

11    sentencing guideline manual.

12          The defendant has pled guilty to the charge of conspiracy

13    to commit violation of the Travel Act.  We'll begin with

14    identification of the base offense level.

15          The guidelines for 18 U.S.C., Section 1952(a)(3) is found

16    at Guideline Section 2E1.2.  That section provides for a base

17    offense level of eight.

18          Next, the court considers specific offense characteristics.

19    In accordance with Guideline Section 2B4.1, there should be an

20    increase of eight levels, as the court finds that the bribery

21    amount exceeded $95,000 but was less than $100,000.

22          There are no adjustments for victim-related adjustments,

23    role in the offense, or obstruction of justice; therefore, the

24    adjusted offense level subtotal is 16.  There are no Chapter 4

25    enhancements.  I'm satisfied that, based upon the timeliness of

1    the defendant's plea, as well as the information provided in the

2    presentence report, that he qualifies for the three levels

3    downward consideration for acceptance of responsibility.  This

4    gives us a total offense level of 13.

5         He has a criminal history category one.  The imprisonment

6    range, under the guidelines, is 12 to 18 months; supervised

7    release range, one to three years.  He's not eligible for

8    probation, and the fine range is $5,500 to $55,000.

9         The court will also affirm that the JSIN criteria was

10   considered by the court, but it will not serve as a factor in

11   the sentence this court will impose.

12        Next, the court looks and considers the downward variance

13   under Guideline Section 4C1.1, and the court will exercise its

14   discretion for a two-level reduction.  This gives us a total

15   offense level of 11 with a guideline range of 8 to 14 months.

16        Counsel for the government, how do you respond to the

17   court's calculations?

18        MS. HINMAN:  Your Honor, the court [sic] agrees with

19   the guidelines that you just stated.  I'll just note for the

20   record, the government's understanding is that, formally

21   speaking, the guidelines offense level for today is 13, based on

22   the guidelines currently in effect, but that Your Honor can vary

23   downward to achieve the equivalent of a guideline offense level

24   of 11, if you so choose.  It just wouldn't change the actual

25   guidelines of 12 to 18 months.

1        THE COURT:  The court is exercising its discretion to

2   do so.

3        MS. HINMAN:  Thank you, Your Honor.

4        THE COURT:  Counsel for the defense?

5        MR. LAUFER:  No objection, Your Honor.

6        THE COURT:  We will proceed in the following order:

7   I'll hear first from counsel for the government; then I'll hear

8   from probation, I'll hear from defense counsel, and then I'll

9   hear from the defendant.  He'll be the last person to address

10  the court before I impose sentence.

11       Counsel for the government, your recommendation?

12       MS. HINMAN:  Your Honor, the government, along with

13  defense and probation, is recommending a sentence of two years

14  of probation, including 12 months of home detention electronic

15  monitoring, and a fine of $100,000, as well as the other

16  conditions recommended by probation.

17       The government reaches this recommendation after balancing

18  the seriousness of Rosenberg's participation in the bribery

19  conspiracy with a number of mitigating factors, including his

20  history of legitimate work, his public apology, and a lack of

21  evidence that Rosenberg participated in negative attacks on

22  competing sellers who were competing with his clients.

23       I think it's appropriate to begin by addressing the

24  seriousness of the offense, because it certainly was a serious

25  offense.

1          Rosenberg used bribery and fraud to obtain improper

2     advantages for his clients on the Amazon Marketplace.  He

3     primarily bribed Amazon insiders to obtain Amazon's internal

4     information.  Suspended sellers, who had learned exactly what

5     Amazon had figured out about their infractions, could use that

6     information to game the system to appeal their suspensions.

7          Mr. Rosenberg also paid bribes to Amazon insiders for

8     specific desired actions on sellers' accounts, such as

9     reinstating suspended sellers.  But he engaged in that kind of

10    activity much less frequently than the bribes for obtaining

11    information.

12         Mr. Rosenberg also participated in the part of the

13    conspiracy that involved submitting forged supplier invoices,

14    which circumvented Amazon's controls to try to ensure that

15    products were authentic and safe.

16         Mr. Rosenberg is being held responsible for bribe payments

17    of more than $100,000.  As with the other defendants we had

18    discussed in this case, the loss is being estimated at the

19    amount of bribes paid because it's not practical to determine

20    the amount of the benefit of the bribes or the loss to consumers

21    or competitors or Amazon, even though those were presumably

22    larger.

23         Now, that's all to say that this was a serious offense.

24    There are also some important distinguishing factors that make

25    Rosenberg's activity less serious than some of the other

1    defendants.

2         In particular, there is no evidence, that the government

3    has, that Mr. Rosenberg engaged in the negative attacks on

4    competing sellers.  So we have no evidence of him being involved

5    in submitting false complaints to Amazon, obtaining false

6    negative reviews against competing sellers, or defacing product

7    listings of competing sellers, and those are all activities that

8    some other defendants in this conspiracy did engage in.

9         Another thing that distinguishes Mr. Rosenberg, in terms of

10   his offense conduct, from the others is that he does not have a

11   separate tax offense, which some of the others do.  So that's

12   all to say serious, but, in some ways, less serious than some of

13   the others.

14        I want to turn now to Mr. Rosenberg's history and

15   characteristics.

16        He has no criminal history, and he has done a lot of

17   legitimate work, including having a very high-volume, primarily

18   legitimate consulting business serving sellers on the Amazon

19   Marketplace.

20        Now, on the one hand, that means he is a wealthy individual

21   who didn't have an excuse to do this, but, on the other hand, he

22   is someone who knows how to be successful using legal means.  He

23   has done that, and he can return to that.

24        He has also used the fact that he had an extensive network

25   of Amazon sellers and consultants to disseminate his public

1    apology to all of those people, and in that public apology, he

2    didn't just take responsibility for what he did, but he made an

3    effort to discourage those other people seeing that message from

4    engaging in this type of illegal activity.

5         Mr. Rosenberg's history, including his legitimate work and

6    his dissemination of his public apology, are important factors

7    that tie into how the government thinks about deterrents and the

8    need to protect the public, so I'm just going to turn to that

9    factor next.

10        Deterrents and protection of the public are important

11   features in this case -- that we've talked about for all of the

12   defendants -- because this kind of conduct caused harm.  It

13   caused harm to customers who were hurt by believing that sellers

14   and products were properly approved, and, instead, may have been

15   exposed to products that could have been substandard because the

16   normal controls on products and sellers were circumvented.

17        This kind of activity caused harm to competitors of

18   Rosenberg's clients and the other co-defendants' clients because

19   they were hurt by having to compete with businesses that

20   achieved unfair advantages through bribery and fraud.  And,

21   finally, it hurt Amazon, primarily in terms of Amazon's

22   reputation and customer trust in Amazon.

23        So we talk about other kinds of features for all these

24   defendants.  Those things make considerations of deterrents and

25   protection of the public important things to think about for

 1    each of these defendants.

 2        When the government thinks about the need to achieve those

 3    goals, in Mr. Rosenberg's case, there are several reasons that

 4    the government thinks a less significant sentence than what some

 5    of the other defendants received may be sufficient to achieve

 6    those goals for Mr. Rosenberg.

 7        So I'm going to start with specific deterrents.  The

 8    government sees the need for specific deterrents as being

 9    somewhat reduced in this case because of Mr. Rosenberg's

10    apology, accepting responsibility, that public apology, and his

11    history of legitimate business activities.  In the government's

12    view, these things make it less likely that Mr. Rosenberg is

13    going to go back to this kind of illegal activity.

14            THE COURT:  Well, counsel, let me stop you there

15    before you go any further, because I'd like to address the

16    correspondence that the court received in the form of Document

17    192, Amazon's victim statement regarding Mr. Rosenberg.  And in

18    that document, counsel, they point out that, essentially, he

19    ceased his protestation of innocence only after he was able to

20    secure a plea deal before this court.  And, also, they do some

21    condemning of him for the fact that he uses a public platform

22    and prominence in the seller community to falsely deny his

23    involvement.  And I recognize that, at some point in time, he

24    transitioned to do a video, which is a positive statement, or

25    can be seen that way.

1        But how do you balance or rectify between what Amazon's

2   perception of what he did to, essentially, get what he wanted,

3   and then transition into a more positive role for the community?

4        MS. HINMAN:  Well, I think the important thing is to

5   think about what kind of acceptance of responsibility we see

6   from Mr. Rosenberg today, because that's what really affects

7   what, you know, is going to happen for him going forward.  And,

8   you know, like many defendants, he spent some time denying, you

9   know, that he had engaged in this activity.  But as he, you

10  know, stands before the court today, I, you know, expect he's

11  going to be taking full responsibility.

12       And he did, in fact, circulate the public apology,

13  actually, before the plea was entered in court, although it was

14  shortly before.  So while the government, you know, certainly

15  takes the court's point that Mr. Rosenberg spent some time

16  denying, I think that the key, in terms of thinking about what

17  kind of deterrents is necessary, is where Mr. Rosenberg has

18  gotten himself today.  And I think, at this point, he has

19  accepted responsibility, he's done that very publicly, and he's

20  tried to deter others.

21       THE COURT:  Okay.  Thank you.  Please continue.

22       MS. HINMAN:  The second point that I wanted to address

23  is about general deterrents.

24       You know, we often think about the sentence in terms of

25  what is needed to be achieved in terms of deterring people in

1    general, not just the defendant sitting before us.  And one

2    reason that we might not need as great a sentence to achieve

3    that general deterrence goal for Mr. Rosenberg today, is that he

4    has already made an effort, himself, to try and contribute to

5    that effort to achieve general deterrences.  Specifically, he

6    did circulate that public apology, which is reaching an audience

7    that I understand to be tens of thousands of people in the

8    Amazon seller and consultant community, and, you know, exhorted

9    them to refrain from these kinds of illegal activities on the

10   Amazon Marketplace.

11       So when the government considers all these factors,

12   particularly the seriousness of the offense, but then taking

13   into account the lack of those negative attacks, the public

14   apology in particular, the government believes that a sentence

15   of two years of probation with 12 months of home detention and a

16   $100,000 fine is sufficient but not greater than necessary to

17   achieve the goals of sentencing.

18       And I would note that that recommendation for a

19   noncustodial sentence also does align with the proposed

20   guideline amendments, which are expected to take effect in

21   November of 2023.

22       So that is all from the government, unless you have further

23   questions.

24           THE COURT:  I have one more question, counsel.

25       You indicated, at the beginning of your presentation to the

1    court, that Mr. Rosenberg would have the opportunity to return

2    to the means in which he makes his livelihood.

3        Are there any restrictions on his ability to participate in

4    his trade because he now will have a felony conviction?

5            MS. HINMAN:  I am not aware of any restrictions that

6    would affect his ability to serve as a consultant, legally.

7    Obviously, I'm not familiar with the state in which he lives and

8    works, but I'm not aware of any specific legal restrictions as a

9    result of the felony conviction that would interfere with his

10    ability to make a legitimate livelihood in consulting work.

11            THE COURT:  Thank you, counsel.  I have no additional

12    questions.

13            MS. HINMAN:  Thank you, Your Honor.

14            THE COURT:  I'll hear from probation.

15            THE PROBATION OFFICER:  Thank you, Your Honor.

16        I have nothing to add, except to clarify, for the record,

17    that we are recommending the special conditions contained in our

18    revised sentencing recommendation, which was submitted earlier

19    this week, and those are recommended by probation in the Eastern

20    District of New York, where Mr. Rosenberg will be supervised.

21        But if you have any questions --

22            THE COURT:  I have no additional questions.  Thank

23    you.

24        Counsel?

25            MR. LAUFER:  Good morning, Your Honor, and may it

1    please the court.

2        Mr. Rosenberg is, in a salient aspect, an unusual criminal

3    defendant.

4        In my own experience and, perhaps, in the experience of the

5    court, criminal defendants, in general, are takers.  They take

6    what's theirs, they encroach on others, and continue to take

7    from others until they cross a line and become criminal

8    defendants.  There are takers and there are givers.

9        Ed Rosenberg is, I think from the submissions that have

10   been presented to Your Honor, is, in every respect, a giver.

11   He's a giver of his time, of compassion, of favors of loans, of

12   kindnesses, and boundless help to many, many people, even

13   strangers, often without compensation, Your Honor.

14       He appears before Your Honor blemished by the crime that he

15   committed, but he also appears as a whole human being, who, in

16   midlife, has accomplished more goodness and kindnesses than

17   many, many people can accomplish in their entire lives.

18       It's incongruent, Your Honor.  It's almost ironic that

19   Mr. Rosenberg is here before the court for sentencing for a

20   crime involving Amazon, a topic that he had made -- he had made

21   a mission in life to try to improve that environment and try to

22   help people who were participants, Your Honor, in that

23   environment.

24       As the letters that are submitted to the court, Your Honor

25   will have seen that he has devoted the core of his working life,

1   with dedicated efforts, to help people with problems, to help

2   people -- enable them to earn a livelihood.  He has been

3   involved late at night, some of the letters will have shown, and

4   even in the early hours of the morning, trying to help people.

5          In his zeal -- in his zeal, he lost north on his moral

6   compass, and that's why he is here.  That has brought him before

7   Your Honor.

8          Now, at this point in his life -- at this point, it's

9   probably fair to say, the lowest point of his life -- he has

10  publicly, he has abjectly apologized, including to Amazon

11  itself, including to the people that he has disappointed, and he

12  has exhorted -- he has exhorted all of his followers, and anyone

13  who will listen to him, to follow Amazon's rules, its

14  regulations in every single aspect.

15         Amazon has written to the court -- I mean has given its

16  victim impact statement.  It's the victim of Ed's crime.  And

17  that letter expresses hurt and anger, and we get it.  Ed gets

18  it.

19         Many of the details, I must say, of Amazon's letter are

20  written without granular knowledge, or even serious knowledge, I

21  believe, of the details of the investigation that are known to

22  the government that have been shared with defense in discovery.

23  I heard someone say something about a million documents or

24  sheets of paper that were exchanged that Amazon would not have.

25  I think a million is probably an exaggeration, but it does

1    convey to the court the mammoth amount of discovery and

2    information, and information that informs the recommendation

3    that the government has made.  And in my own experience, the

4    government would not have made such a recommendation lightly.

5        There is a mountain of discovery that Amazon doesn't know

6    about.  And Amazon has written, for example -- just as an

7    example -- that Mr. Rosenberg facilitated the dissemination or

8    the distribution of unsafe products.  And, frankly, the

9    government's memorandum itself said that there is no evidence to

10   that effect.

11       So Amazon, to a degree, is, from the outside, looking in

12   with the hurt of a victim, which I acknowledge and Ed

13   acknowledges and it's fact.  It's fact.

14       There's another point here, and I will tell the court it's

15   a matter of -- it's a matter of sensitivity.

16       We have reviewed this together -- Mr. Offenbecher and Ed

17   and me -- there's no intent to blame the victim.  That is

18   absolutely the last thing that we wanted to do, that anyone in

19   his right mind would do, candidly.  Okay?  There was no

20   intention here to blame the victim, though Amazon, in its

21   sensitivity, took it that way.

22       But there was no way, I must say to Your Honor, there was

23   no way to explain the context, not to justify it, but to explain

24   the context of what happened here in Ed's crimes without laying

25   out the circumstances, the atmosphere of what existed there at

1    the time.

2        And I will say to Your Honor, the issue, the problem -- and

3    I'm not blaming Amazon -- but the problem that did exist -- that

4    did exist in terms of sellers' inability to get a direct

5    response -- Your Honor has seen these letters, I'm not going to

6    belabor that -- that is a problem.  That is a problem -- I must

7    say, Your Honor, that is a problem that the attorney general of

8    California noted in the lawsuit that the attorney general of

9    California filed against Amazon last year.  And I'm just quoting

10   from that letter -- from that -- a paragraph in the attorney

11   general's -- again, I'm not blaming Amazon.  I'm simply pointing

12   out, I guess, an imperfection that was the context of Ed's

13   criminal conduct that has brought Ed here.

14       I'm quoting from the attorney general's lawsuit.

15       "Amazon admits, in internal documents, that sellers live in

16   constant fear that their accounts will be suspended or that

17   top-selling products will be removed, putting their businesses

18   and livelihoods at risk."

19       Again, this is not an intention to blame Amazon.  Amazon is

20   not to blame.  Ed is to blame that he is here, we acknowledge

21   that, and -- and it's just a fact.

22       Ed comes from a modest background.  He lives modestly.

23   He's been successful.  He has been successful.  He has been

24   successful, but he lives modestly.  He dresses modestly, without

25   airs, without ego, without fancy clothing or airs.  He rides on

1    a bicycle and a scooter.

2          He's succeeded, Your Honor, because of his diligence, and

3    he has succeeded because of kindnesses he's rendered to others.

4          There are many letters that have been submitted to the

5    court, some of them just express gratitude, simple gratitude for

6    what Ed has done for them.  The terms "kind" and "compassionate"

7    and the synonyms for those words occur repeatedly, Your Honor,

8    throughout those letters.

9          And there are letters, of course, from his family.  He's

10   been a considerate, caring father, husband, sibling, grandchild,

11   child, of course.  There are letters from colleagues, of course.

12   So I'm not commending that as extraordinary, but this is the

13   commonplace of somebody who is a decent person, a good person,

14   who really cares, who's not -- who's not bad as a human being.

15         His clergy has written that he's kind, compassionate,

16   generous.

17         Many of the letters come from complete strangers, people

18   who he barely knows, people who he, actually, may not have

19   personally, physically met, other than in Zoom and in

20   communications.

21         Your Honor, I'm sure -- I'm sure many people -- many

22   criminal defendants have come before Your Honor with statements

23   about charity that they have given or good deeds that they have

24   done or began to do or began to do after the criminal problem

25   came to them, they were confronted with a criminal problem.  And

1    his good deeds are lifelong.  Meaning, in the letters, we have

2    traced -- we have traced who Ed is and how he has comported

3    himself and dealt with others throughout the entirety of his

4    life.

5        I mean, there's one letter -- there is a -- there is a

6    holiday in the Jewish religion that's a particularly festive

7    holiday, where people dress up and drink are and are merry and

8    are happy and the like.  And one of the letter writers has

9    written to the court that on that day, he and Ed would not do

10   that, but they would go to hospitals and visit people who were

11   hospitalized and may be lonely or forlorn or needing some

12   compassion.

13       There's another letter in terms of impact that Ed may have

14   had.  It writes, for example, if the court wants to know who is

15   this man who has committed a crime and appears now before Your

16   Honor for sentencing, there is one of the letters that Ed, when

17   he was a student abroad, there was another student who was

18   lonely, depressed, lost, and Ed went out of his way to take him

19   under his wing.  And that letter reports that that person has

20   succeeded in life, become an author, a guider of youth and the

21   like.  I won't say Ed gets credit for that, but sometimes

22   kindness in someone's life can be an inflection point, and Ed

23   can't get credit for that, but it shows who Ed is.

24       He's been kind to his employees.  Mrs. Halberstam has

25   written in great detail.  Ms. Navarro has written how, when her

1    husband was hospitalized for, I think she said a month, she

2    expected to be docked pay, but, no, that's not who Ed is.

3         And Ed went out of his way as well -- went out of his way

4    as well to help her secure the logistics with the transportation

5    of some medicine for her husband.

6         Warehouse workers -- right? -- adjoining employees, meaning

7    not even Ed's employees, have written of his kindness.

8         This empathy is well known, and, again, it's repeated

9    throughout the letters.

10        There's one point that struck me, Your Honor, as I was

11   preparing to address the court.

12        In looking at those letters -- I mean, it's not immediately

13   obvious, but in the looking at those letters, they come from,

14   literally, all over the place.  They're from multiple, maybe a

15   dozen states in the United States, from Europe as well, and

16   other countries as well.  And what struck me -- it's sort of a

17   fanciful thing -- I thought, look, there's a letter from New

18   York, Maine, New Jersey, Delaware, Maryland, Georgia, Florida,

19   Texas, Nevada, California, Oregon, and over into Illinois.

20   There were letters from foreign countries from people, from

21   Spain and from England, that Ed has helped, some for

22   compensation, many without compensation at all.

23        Out of the desire -- and where it all comes from, I think,

24   in my lay analysis, which may not be worthwhile, where it comes

25   from was the experience that he personally had felt when he was

1    knocked out of the box with his audio business many years

2    before, and the despair, and the despair that one feels when one

3    is unable to earn a livelihood, one doesn't know why, one

4    doesn't know how to fix it, one doesn't know how to regain the

5    ability to support one's family.

6        There are letters from lawyers.  There are letters

7    expressing their gratitude for the scores of many clients of

8    theirs whom Ed has helped.

9        In a couple of instances -- I just want to highlight maybe

10   two or three of the letters -- the impact of what he did and

11   the -- of the kindness -- and, you know, there's the obvious,

12   you know, so-and-so was unable to earn a livelihood.  But there

13   is one letter that really -- a couple, actually, one or two,

14   that really moved me.

15       There's a letter from a Mrs. Vinnik -- right? -- who

16   recounts that her children are skilled at ballroom dancing --

17   right? -- I mean, I don't know -- skilled at ballroom dancing,

18   and she writes how -- Ed's enabling of her to earn a livelihood,

19   she writes -- right? -- "On March 19th, 2023, he became the

20   fifth-time U.S. champion in ballroom dancing.  I clearly

21   understand that if not for Mr. Rosenberg's support of my case,

22   it would never have happened."  Right?  It's a mixture of pride

23   and gratitude and all of these things kind of, like, all pulled

24   together, but it just brings to the fore the significance of the

25   kindnesses that Ed has done.

1        Your Honor has before him a good a man, a good person.  It

2   is, I guess, the nub of what I'm trying to convey.

3        Mr. and Mrs. Clifford from England -- right? -- who were

4   selling party goods, they were able to hire single women

5   bringing up children on their own.  Ana Ochoa has written the

6   same thing; that with his help -- one letter -- one last

7   point -- and it kind of moved me.

8        A Ms. Roberts had written, sort of, I thought maybe even a

9   pedestrian letter, kind of like thanking Ed and expressing

10  gratitude, but she took the trouble of securing a couple of

11  posts online from others, and one of those posts is from a lady

12  who had, actually, now had to rely on food stamps, who writes,

13  quote, I'm literally in tears right now as I'm reporting that

14  I'm back being able to earn a livelihood and selling.

15       Ed is remorseful.  His apology is sincere.

16       And now I'm going to touch on something that Your Honor

17  asked the government about that Amazon -- I guess Amazon didn't

18  know or was sensitive to.

19       In terms of Ed's contrition, from the outset -- from the

20  outset -- Ed was cooperative.  This indictment was brought in

21  September of '20, I believe it was, and we had discussions with

22  the government in what way might Ed be able to be helpful or

23  what was the government looking for.  And I and someone in my

24  office and Peter, we spent an extraordinary amount of effort

25  culling together emails and communications and everything.  And,

1    ultimately, in December of 2020, there was a lengthy proffer

2    session in which Ed acknowledged his wrongdoing.

3         Amazon doesn't know what's behind the scenes, right?

4    Amazon is looking at what it's looking at, drawing a reasonable

5    inference -- drawing a reasonable inference, but that inference

6    is wrong.

7         Ed has, behind the scenes, acknowledged his wrongdoing,

8    offered to cooperate, and cooperated in a very lengthy session

9    with a lot of documents -- I don't remember how many -- broken

10   into categories that we had assembled and presented to the

11   government.  That's the real Ed.

12        Was he writing certain things online, trying to defend

13   himself?  Your Honor, first, it's a natural instinct, but

14   second, really, more -- it's a natural instinct.  Okay.

15   Amazon's reaction to the attorney general of California, this

16   lawsuit that I was referring to, was the attorney general got it

17   backwards.  That's like a quote.  Right?  So apart from this

18   kind of, like, sort of instinctive, almost, Ed was being

19   plastered on the Internet, because he was joined in this

20   indictment with other people who were doing, I would say,

21   horrible things, horrible things.  And he felt the need to

22   defend himself.

23        Would it have been better had he been silent?  Sure.  Would

24   it have been better if he used different verbiage?  Yes, that

25   would have been better.  He was trying to defend himself and

1   stay alive while he was being skewered for all of these things

2   people were doing, meaning attacking competitors or tainting

3   their websites and doing all those things that other people --

4   that other people had done.

5       His rehabilitation, he's sincere.  We have been working

6   with The Aleph Institute -- Your Honor would have seen the

7   letter -- and there are many, many steps beyond -- way beyond,

8   you know, what's contemplated in the recommendation that's been

9   put to the court.

10      He has offered to mentor new participants in the Amazon or

11  Internet sales space without compensation.  He, actually,

12  undertook a course, I think, by Northeastern University that

13  deals with ethics.  Right?  He lost his compass.  Right?  That's

14  why he's here before Your Honor.  But he's, actually, taking

15  this course, I think it's Northeastern University.  There is a

16  clergyman who is committed to just kind of -- you know, just

17  drill it home, drilling it into him.  I don't think it's even --

18  well, whether it's necessary or not, it's certainly worthwhile.

19      He has done -- he's offered to sponsor, at his events,

20  needy or struggling -- struggling Internet participants, Amazon

21  participants.

22      The Supreme Court has said, I think it's in the *Gall* case,

23  that probation is not -- is punishment.  It really is

24  significant punishment by itself, and probation, coupled with

25  home detention, is certainly punishment as well.

1          I urge -- you know, just coming back to the Supreme Court,

2     you know, the Supreme Court has emphasized, in the *Pepper* case,

3     the punishment imposed, quote, should fit the offender and not

4     merely the crime.

5          Respectfully, Your Honor, given the mitigating factors that

6     exist here, I respectfully urge the court to impose a sentence

7     in accordance with the recommendation that the parties, the

8     government and the defense, has submitted to the court, and that

9     the probation department concurs in as well.  I respectfully

10    urge Your Honor that that would be a fair exercise of the

11    court's very considerable discretion.

12          THE COURT:  Thank you, counsel.

13          MR. LAUFER:  Yes, sir.

14          THE COURT:  Mr. Rosenberg, your lawyer has spoken for

15    you.  He's provided written materials on your behalf and a large

16    volume of letters this court has read.  Sir, you're not required

17    to say anything.  If you choose to remain silent, that will not

18    be held against you.  But if there are any words you'd like to

19    share with the court, please step to the lectern and share from

20    that location.

21          THE DEFENDANT:  Honorable Judge Jones, I want to

22    apologize to this court, to Amazon, the Amazon community, and my

23    family.  I know I apologized before, but I wanted to say again

24    how sorry I am and how ashamed I am.

25          I know I hurt Amazon.  I was taking Amazon's information,

1   its privacy, and its ability to make its own independent

2   decisions.  That was wrong.  That's against my religion and

3   against my values.  That's not how I want to live my life.

4       I have done a lot of soul searching over these last few

5   years.  I know that I alone put myself in this situation.  I

6   just really regret my actions.  I can never and will never do

7   this again, and I expect to spend the rest of my life trying to

8   make up for my wrongs.

9       Whatever Your Honor decides, I will respect and I will

10  accept, as a result of my actions, and I will accept it as the

11  will of God.

12      Again, I am sorry, and thank you for listening to me.

13          THE COURT:  Thank you, sir.  You may be seated.

14      Mr. Rosenberg, this court is mandated to calculate the

15  appropriate guideline, and I've done that.  The court is also

16  charged with the responsibility of looking at and considering

17  all of the Section 3553(a) factors of the sentencing guidelines.

18  It's my practice to go through each of those factors so that you

19  have a clear understanding of what things the court considered

20  and how I arrived at the sentence that I will impose.

21      I begin first, sir, with your history and characteristics.

22  The court would note that, other than the one blemish on your

23  pretrial service, where you had direct contact with a potential

24  witness, you performed satisfactorily on your supervised

25  release.  The court also notes that you have no criminal

1    history, you had low adverse child experiences, and that you

2    were raised in a middle-class family, you're well educated, and,

3    otherwise, a law-abiding citizen.  That's the person that comes

4    before this court.

5         When the court looks at the nature and the circumstances of

6    the offense, the court finds aggravating circumstances.

7    Aggravating for the fact that you and others paid commercial

8    bribes to Amazon employees and contractors in exchange for

9    information that was inappropriately received and criminally

10   received.

11        The court also notes that there was competitive information

12   that you received, and the court also notes that there were

13   other aggravating activities that you engaged in, but I

14   segregate those from the aggravating activities of the other

15   defendants in this case.  I only hold you responsible for the

16   specific things that you did, and not necessarily for the

17   conduct of other individuals.

18        Next, the court looks at the need for the sentence to

19   reflect the seriousness of the offense.  Now, some may view

20   Amazon -- I think most people on the planet view Amazon -- as

21   one of the largest corporations in existence.  That does not

22   mean that the fact that you had ill-gotten gains or benefits or

23   that your clients received those is any less of a crime.  The

24   court treats this as a very serious offense.  I look at it as a

25   serious offense by the fact that, one, you'll have the

1    opportunity to turn back to your livelihood and continue to

2    engage in that same livelihood and same exact practice that you

3    had before, other than the blemishes that you've created on your

4    record because of what you did here.

5         The reason I asked the government the question if there

6    were any adverse consequences to your ability to make a living

7    was to make a very specific point.  You participated in a

8    process that you caused bribery of other individuals, and people

9    were fired as a result of that.  Those individuals don't get to

10   go back to their jobs.  Those individuals don't get to go back

11   to their livelihood and take care of their families.  They have

12   to come up with other means.  So when I look at this as a

13   serious offense, that's one of the factors the court considers

14   to justify that determination.

15        The court also needs to impose a sentencing to promote

16   respect for the law and to provide just punishment.  The court

17   notes that you were involved in this process for a period of

18   three years.  It wasn't a process that you did things and you

19   continued to do things, and you stopped because your moral

20   compass or your moral barometer said stop.  You stopped because

21   you got caught by law enforcement.  That's a different statement

22   to this court as opposed to you willingly volunteering what you

23   had done.

24        The court also notes that, while you did acknowledge in the

25   video and other statements that you had done wrong to try and

1    communicate, effectively, as the government represents, to

2    10,000 people, that may be fine, but, nonetheless, the court has

3    to impose a sentence so that you have greater respect for the

4    law.  I trust that you do now, but you certainly didn't before.

5         The court also has to impose a sentence to provide adequate

6    deterrents to make sure that you do not engage in this type of

7    conduct again, and also to send a message to other individuals

8    in your trade and practice that, even if it's Amazon or other

9    large corporation, there can and will be consequences for this

10   type of illegal conduct.

11        The court does not factor in the need to protect the public

12   from further crimes, because I think the fact that you have this

13   felony conviction on your record, this blemish on your record,

14   and the fact that you've lived an otherwise law-abiding life,

15   that the likelihood that you'll participate in this kind of

16   criminal activity is minimal.

17        The court sees no reason to factor in the need for

18   education, training, or treatment.  You're well educated, you

19   have the opportunity to return back to your place of employment,

20   and that's not a major factor for this court.

21        The court looks at the avoidance of sentencing disparity,

22   and I find that the two other defendants that were sentenced,

23   one for 10 months and one for 17 months, but there are grave

24   distinctions between what you and what these other individuals

25   did.  Specifically, you didn't involve yourself in some of the

1    malicious conduct, nor were you involved in the tax issues that

2    the other defendants were involved in, and so these are

3    mitigating factors, but it certainly demonstrates to the court

4    that there is no need to be of concern of sentencing disparity

5    in the sentence that I will impose in this case.

6         The court finds that, given the offense of conviction, your

7    background, and all the other factors I just alluded to, that

8    you will be placed on probation, as recommended by the

9    government.  You'll be subject to the standard and special

10   conditions exactly as stated in the recommendation, and that

11   will be consistent with the Eastern District of New York's

12   recommendations and requirements.

13        The court also finds that the fine of $100,000, as agreed

14   to by all parties, will be imposed by this court, as well as the

15   $100 special assessment fine, which is due immediately.

16        It's my understanding that there's no outstanding

17   restitution.  Is that correct, counsel?

18             MS. HINMAN:  Yes, Your Honor.

19             THE COURT:  No restitution will be sought or imposed

20   by this court.

21        Sir, having imposed all the other conditions of sentencing,

22   the only remaining issue is whether or not this court should

23   impose any custodial time.

24        Mr. Rosenberg, I think you need to hear a few words from

25   the court.

1          Your lawyer went on extolling the virtues of you as an

2     outstanding citizen in our community, and based upon the letters

3     I've reviewed and read, I have no reason to disagree or

4     challenge the communications.  No one says that you're not a

5     kind or not a good person, nor has anyone claimed that you

6     haven't done good deeds for the majority of your life.  But I

7     think you have to recognize that even good people, even normal

8     people can do evil things and do evil deeds.

9          Now, sir, one of the concerns that the court has is that

10    you took it upon yourself to be a self-appointed Robin Hood, to

11    take from Amazon and try and identify or commit to the

12    individuals you thought should receive the benefit of your

13    wisdom, knowledge, and experience.

14         Your lawyer pointed out the fact that of the attorney

15    general's office going after Amazon.  You certainly weren't

16    appointed as the attorney general or in that capacity to go

17    after Amazon in that fashion, even if it helped people who were

18    having challenges or difficulties in their life.

19         If the court accepted that an excuse or justification,

20    think of the ramifications that that would have for the balance

21    of our society if everyone in your business can do the exact

22    same thing, to the destruction of business large or small.

23    That's not acceptable, that's not appropriate, and that can't be

24    tolerated.

25         Now, sir, the court believes that the appropriate sentence

1    in this case will be to follow recommendation of all parties.

2    The court doesn't see the justification or need to impose any

3    period of incarceration.

4         The court also notes that this two years of probation will

5    include 12 months of home detention, and you'll be subject to

6    the standard and special conditions exactly as stated by the

7    probation office.

8         The court will not read the special conditions into the

9    record.  They will be included, and I think that you have the

10   knowledge of the special conditions.  Is there any need for the

11   court to go over that, counsel?

12             MR. LAUFER:  No, sir.

13             THE COURT:  In this regard, I believe the overall

14   sentence is reasonable, sufficient, but no more than necessary

15   to carry out the objectives of sentencing.

16        Counsel for the government, before you present the judgment

17   to the defense, I'll ask you to remain at your table, because I

18   wish to give the defendant his rights of appeal.

19        Mr. Rosenberg, as to your rights on appeal, it's my

20   understanding that, under paragraph 17 of the plea agreement,

21   you've waived your rights on appeal.  Any rights you had on

22   appeal are exactly as stated in that document.

23        In addition to those rights, you also have the right to

24   challenge your lawyer's effectiveness, if you believe that's

25   appropriate.

1        If you wish to appeal the sentence, it's very important

2   that you tell your lawyer that that's exactly what you wish to

3   do.  He can explain to you any issues that are appealable and

4   any issues that might survive.

5        Now, if you wish to appeal the sentence and cannot afford

6   the filing fee for the Court of Appeals, you can ask me to waive

7   that fee, and I will direct the court clerk to prepare and file

8   a notice of appeal at your request at no cost to you.  Please be

9   mindful that any notice of appeal must be filed within 14 days

10  of the entry of judgment.

11       Mr. Rosenberg, do you understand your rights on appeal?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  Counsel for the government, you may

14  present the judgment.

15            MS. HINMAN:  May I just make one motion so I can

16  include it at the judgment?  That is, at this time, the

17  government moves to dismiss the remaining counts in the

18  indictment --

19            MR. LAUFER:  I'm sorry.  I'm not hearing, Your Honor.

20            THE COURT:  Do you wish to repeat it, counsel?

21            MR. LAUFER:  I'm sorry.  I was not hearing what

22  counsel --

23            THE COURT:  Do you wish her to repeat it?

24            MR. LAUFER:  No.  Mr. Offenbecher told me what she was

25  saying.

```
 1              THE COURT:  Please continue.

 2              MS. HINMAN:  Okay.

 3         So, yeah, I was just requesting -- motioning at this time

 4    to dismiss Counts 2 through 9.

 5              THE COURT:  Any objection?

 6              MR. LAUFER:  No objection, Your Honor.

 7              THE COURT:  That motion is granted.  Those counts will

 8    be dismissed.

 9              MS. HINMAN:  Thank you, Your Honor.  May I have a

10    moment to finish the judgment?

11              THE COURT:  You may.

12              MR. OFFENBECHER:  Your Honor, Mr. Laufer and I have

13    reviewed the judgment, and I believe it accurately portrays the

14    court's judgement.

15              THE COURT:  Thank you.

16         Counsel, you may present the judgment to probation.

17              MS. HINMAN:  Thank you, Your Honor.

18         May I approach?

19              THE COURT:  You may.

20         Counsel, on the page 4, there's a strikeout for the

21    restitution requirement.  I'm replacing my initials there,

22    striking that from the court's determination.

23         I've reviewed the judgment.  It does reflect my oral

24    ruling, and I've signed it.

25         Good luck, sir.
```

July 14, 2023

1           This concludes this proceeding.  We'll be in recess.

2                (Proceedings concluded at 11:03 a.m.)

C E R T I F I C A T E


          I, Nancy L. Bauer, CCR, RPR, Court Reporter for

the United States District Court in the Western District of

Washington at Seattle, do hereby certify that I was present in

court during the foregoing matter and reported said proceedings

stenographically.

          I further certify that thereafter, I have caused

said stenographic notes to be transcribed under my direction and

that the foregoing pages are a true and accurate transcription

to the best of my ability.



          Dated this 19th day of July 2023.


                              /S/  Nancy L. Bauer

                              Nancy L. Bauer, CCR, RPR
                              Official Court Reporter